**Dated: May 09, 2005**
**The following is ORDERED:**



_____
Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **GERALD E. MACHIN and** | ) | Case No. 05-70084 |
| **SHIRLEY JEAN MACHIN** | ) | Chapter 12 |
| | ) | |
| Debtors. | ) | |

### O R D E R

On the 14th day of April, 2005, the Motion to Modify Stay/Motion to Abandon, filed by Bancfirst; FSA's Response to Bancfirst's Motion to Modify Stay/Motion to Abandon, filed by Farm Service Agency ("FSA"); Objection to Bancfirst's Motion to Modify, filed by the Debtors; Motion to Dismiss, filed by Bancfirst; FSA's Response to Bancfirst's Motion to Dismiss; and Objection to Bancfirst's Motion to Dismiss, filed by the Debtors; came on for evidentiary hearing. Appearances were entered by Robert Inglish, Attorney for Bancfirst ("Creditor"), Gordon Cecil, Attorney for FSA, James Conrady, Attorney for Debtors, and Lonnie Eck, Chapter 12 Trustee. After reviewing the testimony and evidence presented, this Court does hereby enter its findings and conclusions in conformity with Rule 7052, Fed. R. Bankr. P.,

EOD 5/10/05 by cc

in this core proceeding.

Debtors filed for relief under Chapter 12 of the Bankruptcy Code on January 10, 2005. Mrs. Machin is a school teacher, and Mr. Machin raises calves. Debtors own their home and 307 acres which is located outside of Tupelo, Oklahoma. Creditor has liens on certain real property of the Debtors, all livestock and farm equipment, and three vehicles. FSA also has a perfected security interest in the livestock, farm equipment and vehicles.

Creditor seeks dismissal, asserting in its Motion that the Debtors have sold collateral out of trust, and have failed to insure the Creditor's collateral. Creditor also asserts that the Debtors will not be able to propose a confirmable plan. FSA concurs with Creditor's Motion, and urges dismissal. Debtors object to the Motion to Dismiss, and deny selling the Creditor's collateral out of trust. Debtors also argue that the issue of feasibility is untimely.

Creditor states in its Motion to Modify Stay that the Debtors were asked to furnish evidence of insurance at the Meeting of Creditors, but have failed to provide such evidence. FSA joins in Creditor's Motion to Modify Stay, and further states that Debtors agreed to furnish tax returns and cattle sales receipts but have failed to comply. FSA also alleges that the Debtors' cattle herd has suffered significant reduction, pre-petition and post-petition, without the knowledge or consent of the secured lien holders.

At trial, Mr. Gerald Machin testified as to his cattle operations, describing the nature of his business. Mr. Machin raises calves to the age of approximately five (5) to six (6) months, when they reach about 450 pounds, and then sells them. Mr. Machin acquires the calves when they are three (3) days old, and his goal is to acquire twenty-five (25) calves every month. Mr. Machin stated that at the time of the trial his calf inventory was 124 head. Debtors' schedules indicate that at the time of filing, calf inventory was 148 head.

2

Case 05-70084   Doc 80   Filed 05/10/05   Entered 05/10/05 15:45:20   Desc Main
Document      Page 2 of 6

The livestock inventory also includes a bull and fourteen (14) beef cows.

Mr. Machin testified that he has sold many calves pre-petition and post-petition. Mr. Machin sold some calves prior to the bankruptcy filing without the knowledge or consent of FSA or Creditor. Mr. Machin also failed to place funds from calf sales in a supervised account, as required by the security agreement with FSA.

As of the date of the trial, Mr. Machin had sold a total of fifty-five (55) calves since filing bankruptcy, according to his operating reports and testimony. Mr. Machin sold these calves without permission of the Court, Trustee, FSA, and Creditor, and without his own counsel's knowledge. Mr. Machin also failed to place funds from these sales in the supervised account, and stated at trial that he has used the proceeds for various expenses. Debtors' Monthly Operating Reports also indicate that twenty-two (22) calves have died post-petition. This Court notes that the Monthly Operating Reports for January, February and March of 2005, were all filed on April 7, 2005, one week prior to trial. Mr. Machin stated that as of the date of the trial he had sold ten (10) calves in April, and planned to purchase more calves the day of the trial.

In October of 2004, Mr. Machin requested FSA's permission to sell some calves in order to pay some funds to the Creditor. Creditor, however, did not receive any of these funds. Mr. Machin also sold some calves in the names of his children, ages four and two.

Mr. Machin admitted at trial that he has not furnished proof of insurance on his home. He stated that the home is currently insured, however the Debtors had to change insurance companies, and the home was uninsured for about twenty (20) days.

FSA performed a cattle inspection on February 28, 2005, and on the inspection report listed a

3

livestock quantity of ninety-one (91), with the number of calves totaling seventy-six (76). Mr. Stephen Gregory of FSA sent a letter to Debtors' counsel following the inspection, and expressed his concern regarding the decrease in cattle inventory. Mr. Gregory also advised that if the cattle was sold, it was without the knowledge and consent of FSA. He further asked counsel to inform the Debtors to cease and desist from any further sales of FSA collateral. Mr. Machin stated at trial that he was aware of Mr. Gregory's letter, but he continued to sell calves.

Counsel for Debtors sent an e-mail to Mr. Gregory on April 4, 2005, stating that the inspector missed about thirty (30) head of calves, and counsel requested another cattle count. Mr. Machin also stated at trial that the inspector missed the thirty (30) calves. Mr. Gregory stated at trial that FSA did not perform another inspection due to the amount of time that had passed, and all the changes that could have occurred within that time.

Mr. Cody McMurphy, an FSA Farm Loan Officer, inspected the Debtors' cattle for FSA. Mr. McMurphy testified at trial that he counted seventy-six (76) calves on Debtors' property, and that Mr. Machin verified that number, indicating there were no more calves. Mr. Ricky Clark, a Farm Loan Manager for FSA, inspected the inventory with Mr. McMurphy, and also stated at trial that Mr. Machin verified that all the cattle had been counted.

Debtors also have an ownership interest in some property and a trailer in Tupelo, Oklahoma. Mr. Machin stated at trial that it was initially purchased for his stepdaughter, who no longer resides in the trailer. The person currently residing on the property pays rent, and Mr. Machin stated that in a couple of months the note will be satisfied and the current resident will own the property.

ANALYSIS

4

Case 05-70084   Doc 80   Filed 05/10/05   Entered 05/10/05 15:45:20   Desc Main
Document      Page 4 of 6

Section 1208(c) of the Bankruptcy Code provides, in part:

(c) On request of a party in interest, and after notice and a hearing, the court may dismiss a case under this chapter for cause, including,
> (1) unreasonable delay, or gross mismanagement, by the debtor that is prejudicial to creditors;
>
> ***
>
> (9) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation.

11 U.S.C. § 1208(c)(1) & (9). "A multiplicity of factors may be considered in the aggregate to meet the cause requirement of [section 1208(c)]" *Eurele Farms, Inc. v. State Bank in Eden Valley (In re Eurele Farms, Inc.),* 861 F.2d 1089, 1091 (8th Cir. 1988).

In *In re Suthers,* 173 B.R. 570, 573 (W.D. Va. 1994), the United States District Court for the Western District of Virginia found several factors existed in that case which justified dismissal. Some of those factors included incurring further debts without the consent of the bankruptcy court, selling collateral without the secured creditor's knowledge and failing to pay the proceeds to the secured creditor, purchasing cattle without court approval, and allowing insurance on the property to lapse. *Id.*

In the present case, several factors exist that warrant a dismissal. First, this Court is concerned about discrepancies in the Monthly Operating Reports, and the evidence of cattle sales presented in trial. Further, the Monthly Operating Reports for January, February, and March of 2005, were not filed until April 7, 2005, just one week before the trial. The Debtors have purchased and sold cattle without Court approval, and without the consent or knowledge of the secured creditors. Cash collateral is being utilized without the Court's approval and without consent by the creditors. No motion regarding cash collateral has been filed in this case. The Debtors allowed the insurance on the property to lapse for a period of time. Finally, this Court questions the Debtors' good faith, particularly Mr. Machin's intent in selling cattle in the

5

names of his young children. Mr. Machin's testimony regarding this issue is suspect, and the logical conclusion is that Mr. Machin was attempting to avoid the creditor's security interest in the proceeds.

This Court finds that the Debtors have engaged in gross mismanagement of the estate that has been prejudicial to the creditors. As a result, the case should be dismissed.

IT IS THEREFORE ORDERED that the Motion to Dismiss is **granted.**

IT IS FURTHER ORDERED that the Motion to Modify Stay/Motion to Abandon is hereby **moot.**

###